UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
SUZANNE McCRORY,

                                        Plaintiff,

                - against -                                    **OPINION AND ORDER**

ADMINISTRATOR OF THE FEDERAL EMERGENCY            No. 13-CV-872 (CS)
MANAGEMENT AGENCY OF THE U.S. DEPARTMENT
OF HOMELAND SECURITY,

                                        Defendant.
--------------------------------------------------------------------x

<u>Appearances</u>:
Suzanne McCrory
Mamaroneck, New York
*Plaintiff Pro Se*

Shane P. Cargo
United States Attorney's Office
New York, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

        Before the Court is the Motion to Dismiss for lack of subject matter jurisdiction filed by

Defendant Administrator of the Federal Emergency Management Agency ("FEMA").  (Doc. 17.)

For the reasons set forth below, Defendant's Motion is GRANTED.

I.      **BACKGROUND**

        A.  **The National Flood Insurance Program**

        Before describing the facts at issue, it is necessary to provide an overview of the statutory

and regulatory framework pursuant to which the case arises:  the National Flood Insurance

Program ("NFIP").  The NFIP is a "program by means of which flood insurance . . . can be made

available on a nationwide basis through the cooperative efforts of the Federal Government and

the private insurance industry."  42 U.S.C. § 4001(d).  The NFIP was created pursuant to Congressional directive through the National Flood Insurance Act (NFIA), 42 U.S.C. § 4001 *et seq.*, and is administered by FEMA.  Under the NFIA, FEMA "is required to identify flood-prone areas, publish flood-risk-zone data, and revise that data as needed.  Any federally regulated lender making a loan secured by improved real estate located in a designated flood-risk zone must as a condition of making the loan require the purchase of insurance through the [NFIP]."  *Paul v. Landsafe Flood Determination, Inc.*, 550 F.3d 511, 513 (5th Cir. 2008) (internal citation omitted).

As part of this mandate, FEMA creates and maintains maps, called Flood Insurance Rate Maps (FIRMs), of any area that is subject to naturally occurring floods.  *See* 42 U.S.C. § 4101(a).  These maps categorize flood-prone areas into different risk zones based on the severity of the flooding to which the area is susceptible and establish the "base flood elevation" – that is, the measure of how high flood waters are expected to rise in a flood of a certain likelihood (the "base" flood) – for these areas.  The FIRMs are then used to assess premiums for flood insurance policies regulated by the NFIP, and many municipalities impose construction requirements based on the flood risk zones and base flood elevations shown on the FIRMs.  For purposes of this case, it suffices to understand that a "V Zone" denotes an area subject to more damaging, high-velocity wind-driven waves than areas classified as "A Zones."  (*See* Second Amended Complaint ("SAC"), (Doc. 15), ¶ 18; *see generally* 44 C.F.R. § 59.1.)  It follows that insurance premiums are higher, and construction requirements stricter, for property located in a V Zone as compared to an A Zone.

FEMA is required to update these maps every five years, 42 U.S.C. § 4101(e), which involves recalculating the base flood elevation and reassessing the risk zone designation for each

such area, *id.* §§ 4102, 4104.  The NFIA establishes procedures for how FEMA makes these periodic calculations and zone designations, including a public notice and challenge system.  *Id.* The NFIA also recognizes that the flood risk characteristics of a particular property or area may need to be updated between FEMA's periodic re-mappings, whether due to altered physical conditions or the availability of improved data or scientific methods.  Accordingly, a procedure exists for individuals, organizations and municipalities to request a localized update to a piece of a FIRM.  *See id.* § 4101(f).  These localized map modifications are called Letters of Map Revision (LOMRs).

FEMA regulations impose a series of requirements on those seeking LOMRs.  For example, applicants must submit detailed supporting data that includes "all the information FEMA needs to review and evaluate the request," 44 C.F.R. § 65.6(a)(1), and said data and any analysis must be certified by a "registered professional engineer or licensed land surveyor," *id.* § 65.6(f).  Any new analysis must be sufficiently geographically extensive to prevent abrupt discontinuities between the revised areas and adjacent unrevised areas.  *Id.* § 65.6(a)(2).  The regulations outline four different bases for the issuance of an LOMR, with different submission requirements for each:  correcting errors in FEMA's original analysis; changed physical conditions; improved underlying topographical or hydrological data; and improved scientific methodology.  *Id.* §§ 65.6(b)-(e).  Once FEMA receives an LOMR application, it must take action on the application within ninety days.  *Id.* § 65.9.

When an LOMR application is approved, FEMA is required to publish the proposed change in both the Federal Register and a local newspaper prior to the LOMR becoming finalized.  42 U.S.C. § 4104(a).  An administrative appeal may be filed by "any owner or lessee of real property within the community who believes his property rights to be adversely affected

by the Administrator's proposed determination." *Id.* § 4104(b).  But the statute lays out a narrow

basis for any such appeal:  "The sole grounds for appeal shall be the possession of knowledge or

information indicating that [the base flood elevations or flood zone designations] being proposed

by the Administrator . . . are scientifically or technically incorrect." *Id.*  A party seeking to file

an administrative appeal of a proposed LOMR is required to submit the appeal to the chief

executive officer of its local municipality (*e.g.*, the mayor), who then compiles all the appeals for

a given LOMR and forwards them to FEMA.  44 C.F.R. §§ 67.5, 67.7.  FEMA regulations

impose a series of data requirements on administrative appeals that are similar to those imposed

on the original LOMR application, including the requirement that any data submitted must be

certified by an engineer or land surveyor.  *See id.* § 67.6(b).

Finally, the statute provides that any administrative appellant "aggrieved" by FEMA's

decision on the appeal may seek judicial review of that decision in the District Court.  *See* 42

U.S.C. § 4104(g).  Such an action is governed by the standards of review set forth in the

Administrative Procedure Act.  *Id.*; *see* 5 U.S.C. § 706.

### B.  <u>Factual Background</u>

For purposes of the instant Motion to Dismiss, I accept as true the facts, but not the

conclusions, as set forth in the Second Amended Complaint.

Plaintiff lives in a coastal area in the Village of Mamaroneck that is subject to regulation

under the NFIP.  (SAC ¶ 1.)  In essence, Plaintiff complains that other members of the

community have received beneficial LOMRs that have rendered the flood map inaccurate, and

she alleges that FEMA ignored the administrative appeals she filed in connection with those

LOMRs.  (*Id.* ¶¶ 12-14, 25.)

1.  <u>The Ottinger LOMRs</u>

The first of the two LOMRs at issue was applied for by Plaintiff's neighbors, Richard and June Ottinger.  Like Plaintiff's property, the Ottingers' property was located partially in a V Zone and partially in an A Zone.  (*Id.* ¶ 26.)  The Ottingers built a new home on their property in the mid-2000s, but they were denied occupancy because the design of the home did not meet local construction requirements for V Zones.  (*Id.* ¶¶ 26-29.)  Instead of modifying the construction of the home, the Ottingers applied for an LOMR that would redraw the boundary between the V Zone and the A Zone so that their house would fall entirely within the A Zone. (*Id.* ¶¶ 30-34.)  The Ottingers initially applied for the LOMR in December 2008.  FEMA approved the application, LOMR #09-02-0465P (the "2009 Ottinger LOMR"), on August 31, 2009, to take effect on March 1, 2010 absent any appeals from the community.  (*Id.* ¶ 33.)  This application was allegedly based on the existence of better topographical data.  (*Id.* ¶¶ 31-32, 34.) When the LOMR was published, Plaintiff submitted an appeal, arguing that FEMA had used an inaccurate data point in its calculations.  When FEMA corrected the error and redid the analysis, it concluded that the Ottingers' home remained in the V zone, and it therefore rescinded the 2009 Ottinger LOMR.  (*Id.* ¶¶ 36-38.)

The Ottingers then filed a second application for an LOMR, #10-02-1072P (the "2012 Ottinger LOMR"), based on both improved topographic information and changed physical conditions resulting from an improved seawall they had constructed on their property.  (*Id.* ¶ 39.) Plaintiff claims that the supposedly "improved" topographical data submitted by the Ottingers with this application was actually the same data that had been used in the prior LOMR application that FEMA rescinded.  Plaintiff also claims that the application exaggerated the dimensions and characteristics of the seawall.  (*Id.* ¶¶ 40-50.)  After some back-and-forth

between FEMA and the Ottingers, the Ottingers made further improvements to the seawall in response to FEMA's concerns.  (*Id.* ¶¶ 54-58.)  FEMA thereafter approved the application on June 19, 2012, and notice to the community was published in June and July of that year.  (*Id.* ¶¶ 62, 65.)

On September 12, 2012, Plaintiff filed an administrative appeal with the Mayor of the Village of Mamaroneck, arguing that the 2012 Ottinger LOMR application relied on inaccurate data and misrepresented the dimensions and characteristics of the seawall.  (*Id.* ¶¶ 67-68.) Plaintiff's appeal paperwork spanned 175 pages and included multiple datasets, surveys, drawings and photographs.  (*Id.* ¶¶ 69-83; *see also* Norton Decl. Ex. 3 (Plaintiff's appeal submission).)[1]  The thrust of Plaintiff's argument was that "[b]y using the wrong elevation data and an exaggerated wall configuration, the LOMR had falsely distinguished the Ottinger property from those nearby to develop a revised map favoring that particular property and no others."  (SAC ¶ 82.)  FEMA received Plaintiff's submission but declined to recognize it as a proper appeal for two reasons:  first, the submission did not meet the data certification requirements outlined in 44 C.F.R. § 67.6(b); and second, the LOMR in question did not "affect the flood hazard designations on the McCrory property."  (Norton Decl. Ex. 4.)  Plaintiff claims that her submission did in fact contain certified data as required, (SAC ¶ 76), but suggests that FEMA ignored the appeal at the direction of a Member of Congress to whom the Ottingers later made a campaign contribution, (*see id.* ¶¶ 51-52, 63).  The 2012 Ottinger LOMR was finalized on December 19, 2012.  (*Id.* ¶¶ 103-05.)

---

[1] "Norton Decl." refers to Declaration of Beth A. Norton.  (Doc. 19.)

2.  <u>The Yacht Club LOMR</u>

A similar LOMR application was filed in 2012 by the Mamaroneck Beach & Yacht Club with respect to a plot of land owned by the Yacht Club located across the harbor from Plaintiff's property.  (*Id.* ¶ 87-88.)  Like the Ottingers' LOMR requests, this application, LOMR # 12-02-1302P (the "Yacht Club LOMR"), sought to redraw the boundary between the V Zone and the A Zone to redesignate the land into the less burdensome A Zone.  (*Id.* ¶ 89.)  FEMA preliminarily approved the proposed LOMR on August 20, 2012 and published notice to the community thereafter.  (*Id.* ¶ 90.)  Plaintiff filed an administrative appeal of this LOMR with the Mayor of the Village of Mamaroneck on October 24, 2012.  (*Id.* ¶ 94.)  In her submission, Plaintiff argued that the application made an "obvious technical error" by using flood data inputs that were meant for the Town of Mamaroneck, when the property in question was actually located in the Village of Mamaroneck and the Town of Rye.  (*Id.* ¶¶ 91-94.)  Plaintiff also pointed out that the proposed map revision would create illogical transitions to the unrevised areas, in that the revised area would be redrawn into an A Zone and areas farther inland remained in the more severe V Zone, despite the fact that waves become less severe as they travel inland.  (*Id.* ¶ 97.)

The Mayor's office forwarded Plaintiff's administrative appeal of the Yacht Club LOMR to FEMA on October 25, 2012, the day after Plaintiff submitted it.  (*Id.* ¶ 99; *see* McCrory Aff. Ex. G.)[2]  Plaintiff alleges that FEMA ignored her appeal and simply allowed the Yacht Club LOMR to become final without any further proceedings.  (SAC ¶¶ 107-08).  FEMA claims that it never received any appeals as to the Yacht Club LOMR.  (Norton Decl. ¶ 25.)

\*         \*         \*

---

[2] "McCrory Aff." refers to Affidavit of Suzanne McCrory.  (Doc. 21.)

Plaintiff filed suit on February 6, 2013 pursuant to 42 U.S.C. § 4104(g).  (Doc. 1.)  The currently operative Second Amended Complaint was filed on August 8, 2013, (Doc. 15), and alleges that FEMA's decisions on the 2012 Ottinger LOMR and the Yacht Club LOMR violated FEMA's statutory and regulatory obligations in various ways.  Defendant now moves to dismiss the Second Amended Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. (Doc. 17.)

## II.   **LEGAL STANDARD**

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination."  *Id.* (internal quotation marks and citations omitted). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).

### III.   <u>DISCUSSION</u>

Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's claims because:  (a) Plaintiff fails to satisfy the standing requirements of Article III of the Constitution; (b) Plaintiff did not exhaust her administrative remedies; and (c) the NFIA's limited waiver of sovereign immunity with respect to FEMA's flood map determinations does not extend to Plaintiff because she did not perfect administrative appeals.  (*See* D's Mem. 1-2.)[3]  In response, Plaintiff argues that she has suffered injury because her property has become less desirable as compared to the properties that received the beneficial LOMRs, (*see* P's Opp. 19)[4], and that in any event she suffered an independent procedural injury when FEMA, by ignoring her submissions, frustrated her statutory right to file an appeal, (*id.* at 5, 18.)[5]

#### A.  <u>Sovereign Immunity</u>

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.  Sovereign immunity is jurisdictional in nature.  Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (internal quotation marks, citations, and alterations omitted); *see Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005).  "[T]he Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires."  *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992)).

---

[3] "D's Mem." refers to Memorandum of Law in Support of the Government's Motion to Dismiss.  (Doc. 18.)

[4] "P's Opp." refers to Memorandum of Law in Opposition to Defendant's Motion to Dismiss.  (Doc. 22.)

[5] "[S]ubmissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

The NFIA includes two limited waivers of sovereign immunity based upon the subject matter of the suit.  First (and not relevant here), the NFIA waives sovereign immunity for challenges to the agency's disallowance of all or part of a flood insurance claim.  42 U.S.C. § 4072.  Second, as previously discussed, the NFIA allows federal court challenges to FEMA's flood elevation and flood zone classification determinations.  *Id.* § 4104(g); *see generally Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988-89 (8th Cir. 2010); *Kmart Corp. v. Kroger Co.*, No. 11-CV-103, 2012 WL 2126953, at *5-6 (N.D. Miss. June 11, 2012).  With respect to these flood map determinations, however, only those who have filed an administrative appeal with FEMA and are aggrieved by the agency's decision on that appeal may further appeal to the District Court.  *See* 42 U.S.C. § 4104(g) ("[A]ny appellant aggrieved by any final determination of the Administrator upon administrative appeal . . . may appeal such determination to the United States district court for the district within which the community is located.").  Thus, exhaustion of the administrative appeal process laid out in Section 4104 and FEMA's regulations thereunder is a prerequisite to falling within that section's waiver of sovereign immunity and invoking this court's subject matter jurisdiction.  *See Great Rivers*, 615 F.3d at 990; *Normandy Pointe Assocs. v. FEMA*, 105 F. Supp. 2d 822, 827-28 (S.D. Ohio 2000); *accord Robinson v. FEMA*, No. 86-CV-1770, 1987 WL 9906 (D. Mass. Apr. 7, 1987); *City of Biloxi v. Giuffrida*, 608 F. Supp. 927 (S.D. Miss. 1985); *Reardon v. Krimm*, 541 F. Supp. 187 (D. Kan. 1982); *City of Trenton v. FEMA*, 545 F. Supp. 13 (E.D. Mich. 1981).  Accordingly, Defendant's sovereign immunity and exhaustion arguments collapse into the same inquiry:  whether Plaintiff satisfied the statutory and regulatory requirements in filing her administrative appeals with the agency.

**B.  Exhaustion of Administrative Remedies**

Under the doctrine of exhaustion, "[t]he general rule is that a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (internal quotation marks omitted); *see generally McKart v. United States*, 395 U.S. 185, 193 (1969).  The exhaustion requirement serves several purposes, including protecting an agency's authority, conserving the resources of the federal courts, and allowing the agency to develop the factual record, apply its expertise, and exercise its discretion without premature interference by the courts.  *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *superseded by statute on other grounds as recognized by Booth v. Churner*, 532 U.S. 731 (2001); *McKart*, 395 U.S. at 193-95. "[S]tatutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions."  *Beharry*, 329 F.3d at 56; *see Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 117-23 (2d Cir. 2007) (discussing exhaustion requirements in context of immigration appeals).[6]

As previously discussed, exhaustion of administrative remedies before FEMA is mandated by statute.  *See* 42 U.S.C. § 4104(g).  The NFIA and FEMA's implementing regulations lay out a detailed series of requirements for any challenge to a base flood elevation calculation or zone categorization in a proposed LOMR.  In this case, FEMA offered two explanations for why it disregarded Plaintiff's submission as to the 2012 Ottinger LOMR:  first, that Plaintiff did not comply with the data certification requirements in 44 C.F.R. §§ 67.6(b)(1) and (2); and second, that the proposed LOMR would not affect Plaintiff's property.  (*See* Norton

---

[6] Statutory exhaustion requirements are subject to a narrow exception not applicable here:  exhaustion is not required "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint."  *Booth*, 532 U.S. at 736.  Absent an express provision, a more generalized futility exception may not be read into a statutory exhaustion requirement.  *Id.* at 741 n.6; *see generally Beharry*, 329 F.3d at 57-59.

Decl. Ex. 4 (letter from FEMA describing reasons); D's Mem. 20-24.)  Defendant states that it

never received any appeal submissions at all in connection with the Yacht Club LOMR.  (D's

Mem. 10.)

As to Plaintiff's appeal of the 2012 Ottinger LOMR, (Norton Decl. Ex. 3; Cargo Decl. Ex

A (three oversized maps missing from Norton Decl. Ex. 3)),[7] some of the materials include

certifications by licensed engineers or land surveyors, but many of them do not.  FEMA's

regulations require that *all* of the data and analysis submitted in connection with an LOMR

application or LOMR appeal be certified.  *See* 44 C.F.R. § 65.6(f) ("All analysis and data

submitted by the requester shall be certified" in connection with an LOMR application); *id.*

§ 67.6(b)(1) ("Supporting data must be furnished to FEMA including certifications . . . of the

new data . . ." for appeals alleging mathematical or measurement error or changed physical

conditions); *id.* § 67.6(b)(2)(v) (requiring "certification of correctness of any alternate data

utilized or measurements made" for appeals alleging an error in applying scientific methods or

the use of inferior data).  Accordingly, FEMA did not violate its own regulations by refusing to

consider Plaintiff's submission as a proper appeal.[8]  Plaintiff has not carried her burden of

showing that she exhausted administrative remedies in connection with her appeal of the 2012

---

[7] "Cargo Decl." refers to Declaration of Shane Cargo.  (Doc. 25.)

[8] Defendant points to no law justifying its alternative basis for ignoring Plaintiff's submission – that Plaintiff's
property does not fall within the area of the Flood Insurance Rate Map to be revised by the LOMR.  To the contrary,
the NFIA explicitly grants a right to file an administrative appeal to "any owner or lessee of real property within the
community who believes his property rights to be adversely affected" by the LOMR in question.  42 U.S.C.
§ 4104(b).  It seems to the Court that if Congress had intended to limit the right to file an appeal with the agency to
those whose property falls within the revised portion of the map or who in fact were adversely affected, it would not
have used the broad phrases "any owner . . . *within the community*" and "who *believes* his property rights to be
adversely affected."

Ottinger LOMR, and her claims in the instant lawsuit regarding that LOMR are thus barred by sovereign immunity.[9]

In contrast, regarding the Yacht Club LOMR, Plaintiff has submitted a copy of the October 25, 2012 email in which the Deputy Clerk of the Village of Mamaroneck forwarded Plaintiff's appeal to the appropriate FEMA official.  (*See* McCrory Aff. Ex. G.)  Defendant's reply papers do not address this email.  Plaintiff has thus carried her threshold burden of showing that she satisfied the statutory requirement to file an administrative appeal, but that the agency improperly disregarded her submission (whether intentionally or inadvertently).  Accordingly, I find that Plaintiff has exhausted her administrative remedies as to the Yacht Club LOMR, and that the NFIA therefore waives sovereign immunity with respect to that aspect of the instant lawsuit.  Nevertheless, I conclude that the Complaint must be dismissed because Plaintiff lacks standing to invoke this Court's jurisdiction as to the Yacht Club LOMR, and I would reach the same conclusion as to the 2012 Ottinger LOMR if the question were properly before me.

## C.  **Constitutional Standing**

Defendant argues that while the NFIA may grant a right to file an administrative appeal to a wide category of individuals, the right to further appeal to the District Court is limited to a narrower class of individuals actually "aggrieved" by FEMA's decision, *see* 42 U.S.C. § 4104(g), and in any event the core standing requirements inherent in Article III still apply. (*See* D's Mem. 10-20; D's Reply 2-6.)  Because I conclude that Plaintiff has not suffered a concrete injury in fact as required by Article III, I need not address Defendant's arguments

---

[9] Plaintiff's argument that FEMA was required to accept her appeal of the 2012 Ottinger LOMR because it accepted her appeal of the 2009 Ottinger LOMR is unconvincing.  The doctrine of equitable estoppel is not generally available against the government.  *See Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 109-10 (S.D.N.Y. 2005).  Moreover, even if FEMA had accepted uncertified data in 2009 – which Defendant contests, (*see* Reply Memorandum of Law in Further Support of the Government's Motion to Dismiss ("D's Reply"), (Doc. 24), 9-10) – it would not render FEMA's enforcement of its regulations in 2012 arbitrary and capricious.

regarding:  (1) the meaning of "aggrieved" as that word is used in Section 4104; (2) redressability; or (3) prudential standing considerations.

Article III of the Constitution limits a federal court's jurisdiction to actual "cases" and "controversies."  U.S. Const. art. III, § 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "Constitutional standing is the threshold question in every federal case, determining the power of the court to entertain the suit."  *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001) (internal quotation marks omitted).  There are three constitutional standing requirements that every plaintiff must satisfy in order to invoke the jurisdiction of the federal courts:  (1) "an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest)"; (2) "causation (*i.e.*, a fairly . . . traceable connection between the alleged injury in fact and the alleged conduct of the defendant)"; and "(3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."  *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (internal quotation marks omitted).  These minimum requirements to invoke jurisdiction exist in all cases, separate and apart from whatever statutory standing requirements may exist in the laws under which a plaintiff has filed suit (here, being an "appellant aggrieved" by FEMA's decision on the administrative appeal).  *See generally Alliance for Envtl. Renewal v. Pyramid Crossgates Co.*, 436 F.3d 82, 85-86 (2d Cir. 2006).  The party invoking federal jurisdiction bears the burden of establishing that it has standing to do so.  *Lujan*, 504 U.S. at 561.

These requirements are somewhat less rigorous in cases in which the plaintiff claims she has sustained a procedural injury.  "The person who has been accorded a procedural right to protect [her] concrete interests can assert the right without meeting all the normal standards for redressability and immediacy."  *Lujan*, 504 U.S. at 572 n.7.  "To show redressability, plaintiffs

alleging procedural injury must show only that they have a procedural right that, if exercised, could protect their concrete interests."  *NRDC v. FHFA*, 815 F. Supp. 2d 630, 637 (S.D.N.Y. 2011) (internal quotation marks omitted), *aff'd sub nom. Town of Babylon v. FHFA*, 699 F.3d 221 (2d Cir. 2012).  "Unlike redressability, however, the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  In other words, "deprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing."  *Id.* at 496 (internal quotation marks omitted).

In this case, Plaintiff cannot point to a concrete injury in fact that she has suffered as a result of the issuance of the 2012 Ottinger LOMR and the Yacht Club LOMR.  Most of Plaintiff's argument on the issue of standing relates to (a) whether she has statutory standing under Section 4104 to bring her administrative appeal, (*see* P's Opp. 5-9), which is a necessary but not sufficient condition to establishing subject matter jurisdiction, *see Alliance for Envtl. Renewal*, 436 F.3d at 85-86; and (b) the fact that she has suffered a procedural injury when FEMA ignored her properly-filed appeals, (*see generally* P's Opp. 9-17).  Even accepting that Plaintiff has suffered a procedural injury as discussed in Part III.B above, at least as to the Yacht Club LOMR, Plaintiff must still show an underlying concrete and particularized injury in fact that was affected by that procedural error in order to satisfy the requirements of Article III. *Summers*, 555 U.S. at 496.

Plaintiff's papers complain of two "injuries" suffered as a result of the issuance of the LOMRs in question.  First, Plaintiff claims that she "has a right to expect that Defendant will scrupulously follow its governing statute and regulations in its map revision . . . ." (SAC ¶ 121.) But such a complaint – that an administrative agency is not following its governing statute – is a

generalized grievance insufficient to confer standing absent some concrete harm to the individual

plaintiff asserting it.  The federal courts "are not empowered to seek out and strike down any

governmental act that they deem to be" in violation of law.  *Hein v. Freedom From Religion*

*Found.*, 551 U.S. 587, 598 (2007).  To the contrary, "[v]indicating the public interest (including

the public interest in Government observance of the Constitution and laws) is the function of

Congress and the Chief Executive."  *Lujan*, 504 U.S. at 576 (emphasis omitted).  "A litigant

'raising only a generally available grievance about government – claiming only harm to [her] and

every citizen's interest in proper application of the Constitution and laws, and seeking relief that

no more directly and tangibly benefits [her] that it does the public at large – does not state an

Article III case or controversy.'"  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) (quoting

*Lujan*, 504 U.S. at 573-74).

     The second injury Plaintiff claims to have suffered is that when Plaintiff's neighbors

received the beneficial LOMRs, "the market value of Plaintiff's property was effectively lowered

compared to the revised properties.  Plaintiff's house lost comparable valuation because it

became subject to higher flood insurance premiums and more stringent construction

requirements than the nearby properties whose flood mapping was downgraded based on error."

(SAC ¶ 116.)   Plaintiff argues that her property will be "comparatively less attractive to

potential buyers now that Defendant has revised its map to make [her] property appear to be in a

riskier flood zone that those that have been revised."  (*Id.* ¶ 15.)  But Plaintiff's property did not

become subject to higher flood insurance premiums, nor did it lose actual value.  To the contrary,

the mapping of Plaintiff's property remained entirely unaffected by the two LOMRs of which

Plaintiff complains.  Plaintiff is in precisely the same position regarding both flood insurance

premiums and property value as she was before the Ottingers and the Mamaroneck Beach &

16

Yacht Club applied for LOMRs with respect to their own properties.  If Plaintiff's neighbors do in fact now pay less in flood insurance premiums than does Plaintiff, that is only because their rates decreased as a result of the LOMRs.  Had Plaintiff's insurance rates actually increased as a result of the LOMRs, she would have a concrete and particularized injury of which she could complain to a federal court.  But that is not the case here.  And if Plaintiff believes that the data relied on in those LOMR applications justifies remapping her property into the A Zone as well, (*see id.* ¶ 83), she is free to submit her own application for an LOMR as to her property.  But she has not done so.  The fact that a third party has received what Plaintiff refers to as an "undeserved benefit," (*id.* ¶ 10), does not constitute an injury to Plaintiff sufficient to confer Article III standing.  Plaintiff has presented no evidence that the value of her home has actually decreased, and any concern Plaintiff has about potential future buyers being more interested in the Ottingers' property than her own because of the flood risk zoning is speculative at best.[10] Indeed, there is no indication that either the Ottingers' home or hers is on the market or will be any time soon (or before the next five-year update of the maps), and no indication of any effect on the market whatsoever.  The harm alleged is "conjectural or hypothetical," rather than "concrete" and "actual or imminent," and thus there is no Article III standing.  *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *see also Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157-59 (D.C. Cir. 2005) (where plaintiff alleges injury to procedural right designed to protect her threatened concrete interests, requirement of immediacy is relaxed but not eliminated, and requirement of injury in fact remains).

---

[10] That the Yacht Club's property across the bay could affect the market for Plaintiff's residence is even more conjectural.

Accordingly, as Plaintiff can point to no "concrete interest that is affected by the deprivation" of her procedural right to file an administrative challenge to an LOMR, *Summers*, 555 U.S. at 496, Plaintiff has not suffered an injury in fact and therefore does not have standing to invoke this Court's jurisdiction.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, I find that Plaintiff does not have standing to bring the claims alleged in the Second Amended Complaint, and in addition she has failed to exhaust her administrative remedies as to the 2012 Ottinger LOMR.[11]  Accordingly, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Doc. 17), and close the case.

**SO ORDERED.**

Dated: May 22, 2014
        White Plains, New York

_____
              CATHY SEIBEL, U.S.D.J.

---

[11] Nevertheless, based on the evidence Plaintiff has presented, I am troubled by FEMA's apparent casual disregard of one of Plaintiff's administrative appeals.  Plaintiff has submitted evidence that her appeal of the Yacht Club LOMR was in fact transmitted to FEMA, but FEMA has provided no explanation for why it did not process that appeal at all.  I trust that in the future, FEMA will be more careful in respecting the procedural rights of persons having business before it.  That an individual does not have standing to enforce a procedural right in the federal courts does not absolve an agency of its obligation to scrupulously respect such a right.